**In re Anonymous No. 52 D.B. 80**

Disciplinary Board Docket no. 52 D.B. 80.

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania

McDONNELL, *Board Member,* November 18, 1981 — Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

Office of Disciplinary Counsel filed a petition for discipline against respondent, [   ], on October 17, 1980. The said petition for discipline charged respondent with violating the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceipt or misrepresentation;

c. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

d. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

e. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

f. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available lawful means;

g. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment.

h. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

i. D.R. 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to a lawyer or a law firm should be deposited therein;

j. D.R. 9-102(B)(3): A lawyer shall maintain complete records of all funds, securities and other properties of a client coming into possession of a lawyer and render appropriate accounts to his client regarding them;

k. D.R. 9-102(B)(5): A lawyer shall promptly pay or deliver as requested by a client the funds, securities, or other properties in the possession of a lawyer which the client is entitled to receive.

Eventually an answer to the petition was filed by respondent and a hearing was held on December 30, 1980.

On June 23, 1981, the report of the hearing committee was filed at which time the majority of the Committee recommended a six month suspension, and a concurring and dissenting opinion was filed by hearing committee member who recommended a public censure. Petitioner filed its brief on exceptions on July 1, 1981, and respondent filed a brief in opposition to the exceptions on July 24, 1981.

An oral argument was held on September 8, 1981 with a panel consisting of Board Members Frank J. McDonnell, Sidney L. Krawitz and Professor Winfield Keck.

The matter was adjudicated by the Disciplinary Board on September 18, 1981.

## II. FINDINGS OF FACT

The hearing committee found and the Disciplinary Board concurred in the following findings of fact:

1. Respondent, [ ] Esq., is an attorney admitted to practice law in the Commonwealth of Pennsylvania, and his office is located at [ ].

2. Decedent, [ ], died on September 18, 1978.

3. On or about September 18, 1978, decedent's daughters, [ ] were granted letters testamentary as co-executrices for the Estate of [decedent], and the co-executrices hired respondent for legal representation in their capacity as co-executrices of the aforesaid estate.

4. On or about December 18, 1978, the primary asset of [decedent's] estate, real estate located at [ ], Bethlehem, Pa., was sold on behalf of the estate for the approximate sum of $15,000.

5. Despite the sale of the aforesaid real estate in December, 1978, the Pennsylvania Inheritance Tax was not paid until on or about March 4, 1980, resulting in an assessment of interest against the estate.

6. Despite the sale of the aforesaid real estate in December, 1978, the bulk of the estate documents necessary to finalize settlement of the estate were not filed with the court until in or about late February, 1980.

7. Despite the sale of the aforesaid real estate in or about December, 1978, certain debts of the state were not paid until in or about January, 1980, and a partial distribution to the beneficiaries of the estate was not made until in or about late February, 1980.

8. From on or about November 10, 1978, to on or about January 28, 1980, respondent converted to his own uses and purposes, without the knowledge or consent of either co-executrix, a sum of money in the approximate amount of $13,375 from the Estate of [decedent].

9. The aforesaid conversion was accomplished by a series of checks drawn on the account of the Estate of [decedent] and made payable to respondent. The aforesaid checks had been previously signed in blank by the co-executrices at respondent's request.

10. The aforesaid checks, all of which were made payable to the order of respondent, are as follows:

| Date | Amount |
|---|---|
| 11/10/78 | $200.00 |
| 11/14/78 | 60.00 |
| 11/17/78 | 100.00 |
| 11/20/78 | 180.00 |
| 12/7/78 | 75.00 |
| 12/15/78 | 185.00 |
| 2/26/79 | 100.00 |
| 2/27/79 | 100.00 |
| 3/7/79 | 7,500.00 |
| 4/3/79 | 2,500.00 |
| 4/30/79 | 100.00 |
| 1/11/80 | 1,600.00 |
| 1/17/80 | 200.00 |
| 1/18/80 | 150.00 |
| 1/23/80 | 125.00 |
| 1/28/80 | 200.00 |

11. The aforesaid sums of money from the Estate of [decedent], which respondent converted to his own uses and purposes without the permission, knowledge, or consent of the co-executrices, do not

include a check dated February 25, 1980, payable to respondent from the [decedent's] estate in the amount of $762.43, representing respondent's counsel fee less inheritance tax penalty.

12. Throughout the period of his representation of the co-executrices, when inquiries were made to respondent as to why settlement of the estate was taking so long to complete, respondent stated that delays were due to secretarial problems and the press of other legal matters. In fact, respondent's statements were false since delays were caused by respondent's conversion of the aforesaid estate funds, despite whatever secretarial problems respondent may have had.

## III. DISCUSSION

The hearing committee heard testimony from respondent himself and from several witnesses. After hearing all of the evidence, the hearing committee concluded that respondent had violated all of the Disciplinary Rules that he had been charged with in the petition filed by the office of the Disciplinary Counsel. The majority of the hearing committee recommended a six month suspension from the practice of law, and the third member of the committee recommended public censure. With these recommendations, the board cannot concur. The committee found that respondent had violated eleven Rules of the Disciplinary Code, and the record substantiates the conclusions that the hearing committee made. These are all serious violations of the Disciplinary Code, and the board was unanimous in concluding that a more serious recommendation to this honorable court must be made. The record supports very strongly the conclusion

that respondent did, in fact, convert for his own use funds from a client's estate. This conversion took place over the period of time from November, 1978 thru January, 1980. There were 16 separate checks written over that period of time with respondent as payee for his own use and purpose totalling an amount of $13,375. The hearing committee further found that respondent had neglected his legal handling of [decedent's] estate in that he did not file the inheritance tax return timely, thereby incurring additional interest penalties against the estate. The committee also found that respondent had engaged in misrepresentations to his client in response to inquiries made to him as to why the settlement of the estate was taking so long to complete. The hearing committee concluded that "in fact, respondent's statements were false since delays were caused by respondent's conversion of the aforesaid estate funds, despite whatever secretarial problems respondent may have had" (Hearing Committee Report, Page 4; Petition for Discipline, Paragraph 13).

Petitioner, in its brief on exceptions, asked that respondent be disbarred from the practice of law. With this request, the board concurs. The record shows that respondent had the executrices of the estate sign 16 checks in blank at the beginning of his handling the estate. It was those 16 checks over a 14 month period that respondent converted to his own use without the knowledge of the executrices of the estate. Respondent tried to cover up ten of the 16 acts of misappropriation by inscribing the words "counsel fee" or "fee" on the estate checks. Respondent admitted at the time of the hearing in his testimony that his proper legal fee was for the one check in the amount $762.43 which was dated February 25, 1980, and that is not one of the checks

that respondent is charged with converting to his own use.

Respondent's wrongful conduct was even more seriously demonstrated by the fact that he admitted at the hearing that five of the 16 checks in question were written after respondent was aware that decedent's granddaughter had filed a complaint against him with the local bar association alleging undue delay.

The hearing committee in making its recommendation of a six month suspension took into consideration the fact that respondent did make restitution for all of the money that he had used for his own benefit. In particular, the hearing committee based its recommendation on the fact that respondent has acknowledged that he had done something improper, noting his testimony on page 129 of the notes of testimony.

"Instead of going out and borrowing the money, which I ultimately did, from my friends, I did what obviously is a very stupid thing. I mean, there is no question. I realize as much as this Board does that what I did was improper. I went and took the money, assuming that I would, in the near future be getting fees in that I was entitled to, considerably more than I had taken."

"It was my intention to put it back in. When [ ] made that complaint, I decided I must make a partial distribution. I had no legitimate reason to hold it up any more."

The board, after reviewing the entire record, concluded respondent's conduct establishes that he violated the Disciplinary Code in that he did, among other matters, take money that did not belong to him over a period of 14 months and used it for his own benefit. The fact that he paid it back

does not mitigate the seriousness of the offenses that he committed. The board is of the opinion that respondent is unfit to practice law and his conduct evidences a total disregard for the trust placed in him by his clients. The court has so found in the decision in the Matter of Leopold, 469 Pa. 384, 366 A. 2d 227 (1976) and in Office of Disciplinary Counsel v. Lewes 493 Pa. 519, 426 A. 2d 1138 (1981). Most recently in the decision in Office of Disciplinary Counsel v. Ewing, _____ Pa. _____, 436 A. 2d 139 (1981), the court concluded that when a lawyer makes personal use of another's funds, then disbarment is the proper discipline.

In this case, respondent used a client's funds for his own use and negligently handled a matter entrusted to him. The board is of the opinion that disbarment is called for in order to protect the public and to preserve the public's confidence in the legal profession.

## IV. RECOMMENDATION

The board respectfully recommends to your honorable court that respondent be disbarred.

Messrs. Johnson and Daniels did not participate in the adjudication.

## ORDER [OF PENNSYLVANIA SUPREME COURT]

O'BRIEN, C.J., And now, February 26, 1982, the recommendation of the Disciplinary Board dated November 18, 1981, is accepted; and it is ordered that [respondent] be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.